UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

RASHARD BROWN                    USDC.C.A.No.

v.

DEPARTMENT OF CORRECTIONS et al
DEFENDANTS,

### PLAINTIFF'S VERIFIED COMPLAINT:

INTRODUCTION:

    Plaintiff files this action for civil rights violations pursuant to 42 USC § 1983 and state violations against Defendants unlawful excessive force through a no knock cell entry in violation against established state law. Also, the retaliation against Plaintiff for filing a grievance over the assault resulting in his placement in the SMU pending out of state transfer.

JURISDICTION:

    Jurisdiction is invoked under 42 USC §1983, G.L.c. 12 §11I and 11H, G.L.c. 231A §1, and Tort Claims of Assault and Battery and Massachusetts Tort law statutes.

PARTIES:

    1.  Plaintiff Rashard Brown is a prisoner lawfully committed to the Department of Corrections (DOC), who reside at MCI-Norfolk P.O.Box 43, Norfolk Ma 02056

    2.  Defendant Department of Corrections is being sued in its official capacity as the Department of Corrections, who is repsonsible for the administration and oversight of its tactical team training and protocals. Said responsibilities included, adequate training of all tactic team officers to follow the 103CMR505 procedures, to establish guidelines and safety prevention measures to execute no knock cell entries to decrease excessive force, hiring ;training, preparation, and implementation of policies and procedures governing the duties and performances of supervisory and non-supervisory personnel including the safety of inmates.

2.

3. Defendant Thomas Turco III, former DOC Commissioner is being sued in his official and individual capacity as Commissioner of DOC for authorizing his Tactical team to go outside the parameters set in the 103CMR505 procedures to execute a no knock cell entry resulting in Plaintiff's injuries in direct response to a unrelated staff assault.

4. Defendant John Doe, Former Deputy Commissioner of Re-entry and Classification is responsible for the care and custody of Plaintiff. He is being sued in his official and individual capacity as Deputy Commissioner of Re-Entry.

5. Defendant John Doe, former Deputy of Commissioner of Operations is responsible for the care and custody of Plaintiff. He is being sued in his official and individual capacity as Deputy Commissioner of Operations.

6. Defendant Steven Silva, former Superintendent of Souza Baranowski Correctional Center (SBCC). He is responsible for the care and protection of Plaintiff. He is being sued in his official and individual capacity as former Superintendent of SBCC.

7. Defendant Keith Nano, is former Deputy of Operations of SBCC. He is responsible for the care and custody of Plaintiff. He is being sued in his official and individual capacity as Deputy Superintendent of Operations.

8. Defendant John Doe, former Deputy Superintendent of Classification and Re-Entry, who is responsible for Plaintiff's care and custody. He is being sued in his official and individual capacity as Deputy Superintendent of SBCC.

9. Defendant John Doe, former Director of Security of SBCC, who is responsible for the care and custody of Plaintiff and enforcement of all related force policies and regulations. He is being sued in his official and individual capacity as Director of Security of SBCC.

10. Defendant Samual Ramos, is a Captain of SBCC, who is responsible for the care and custody of Plaintiff. He is being sued in his official and individual capacity as Captain of SBCC .

11. Defendant John Doe, is a tactical move team member, who is responsible for the care and custody of Plaintiff and enforcement of all force policies and procedures. He is being sued in his official and individual capacity as a tactical move team member.

12.  Defendant John Does II Tactical team member, who is responsible for the care and custody of Plaintiff and enforcement of all force policies and procedures. He is being sued in his official and individual capacity as tactical team member.

13.  Defendant John Doe III tactical team member, who is responsible for the care and custody of Plaintiff and enforcement of all force policies and procedures. He is being sued in his official and individual capacity as tactical team member III.

14.  Defendant John Doe IV tactical team member, who is responsible for the care and custody of Plaintiff and enforcement of all force policies and procedures. He is being sued in his official and individual capacity as tactical IV.

15.  Defendant John Doe V tactical team member, who is responsible for the care and custody of Plaintiff and enforcement of all force policies and procedures. He is being sued in his official and individual capacity as tactical member V.

16.  Defendant John Doe VI tactical team member, who is responsible for the care and custody of Plaintiff and enforcement of all force policies and procedures. He is being sued in his official and individual capacity as tactical team member VI.

## STATEMENT OF FACTS:

17.  On August 20, 2018, a staff assault occurred in SBCC housing unit located on the green side of the facility. SBCC is divided into two halfs. The gray side of the prison which is divided into two floor holding 8 housing unit. The green side of the prison is situated physically the same way as the grey side.

18.  Neither Gray nor Green side of the prison interacts with each other based on security reasons related to enemy situations. Housing units on both sides received approximately 19-20 hours a day. These units' inside recreation is conducted by split recreation, which means half of the units are released for a hour in the morning, 90 minutes in the afternoon, 90 minutes at night at time. Once one side recreates then the second half of the unit is released.

19.  The only units that both sides of the units are released together inside the unit is L-2 working unit and H-2 lifer's unit. These units were considered privilege units where men demonstrating good behaviour and work ethics are placed in these units.

4.

20. On August 21, 2018, Defendant Silva, Nano and John Doe Deputy Supt' of Classification and Reentry coordinated a institutional search of the prison with Defendant Turco , Deputy Comm'r of Operations and Deputy Comm'r of Clasification and Reentry.

21. Defendant Turco authorized Defendant Ramos and Tactical team John Does I-VI to conduct "no knock cell entry into targeted inmate's cell in violation of forces regulations and procedures 103CMR505 et al. These targeted inmates were Black inmates that had been identified as Security Threat Group members.

22. The "no knock cell entry authorizations allowed the move team to open the cell door without placing an inmate in restraints first. The move team would run into the cell with a shield charging at the inmate barking orders simultanously. This created a heighten chance of inmate assault by being surprised by officers and believing an assault on his person was occurring.

23. Defendant Turco's authorization of the "No knock cell entry" after a staff assault was an exercise of poor judgement understanding that these officers serving on the move team would be emotionally charged given the August 20, 20218 staff assault. This judgement reflected Defendant Turco's judgement to incite a situation in which inmates would be taught a punitive lesson by a staff assault upon the inmate's person.

24. Defendant Silva, Nano and John Doe classification knew at the time that they developed a hit list of potential inmates for this "no knock cell entry which included Defendant Director of Security that: Plaintiff was no apart of the Security Threat Group (STG) responsible for the staff assault; Plaintiff had not been into any trouble nor had incurred any disciplinary action over a year which permitted his housing in the work unit L-2.

25. Despite Defendants Silva, Nano, Deputy Supt' of Classification , and Director of Security (DOS) knowledge cited in paragraph 24 of this complaint. These Defendants placed Plaintiff on this hit list and forwarded it to Defendant Turco.

26. On August 21, 2018, Plaintiff's cell was breached by the Defendants Ramos and Defendants I-VI based on him being a black STG inmate unrelated to the August 20, 2018 incident. As Plaintiff attempted to comply with directives of getting on the ground, Defendants I-VI tackled him to the floor, hitting his head on the bedframe and placing a knee on his neck obstructing his ability to breath. Plaintiff kept saying that he was not resisting but force continued to be applied to gain him in hand cuffs.

27. Plaintiff was eventually handcuffed and escorted to a holding area to be interview by an officer. Plaintiff was asked several questions about the staff assault that occurred on the Green side units of the prison. Plaintiff asked why was forced used against him for something that he had nothing to do with the gray side inmates. The officer informed Plaintiff that a message had to be sent to prevent future assaults against staff.

28. Plaintiff was denied medical and mental health to be checked out which is normally a part of the procedures after force has been used against an inmate. Instead, Plaintiff was placed back into his cell.

29. On August 21, 2018, Plaintiff initiated a grievance against the Tactical Response Team members for excessive force in breach of 103CMR505 and denial of medical treatment in violation of his 8th amendment right to the U.S. Constitution. This grievance was denied on October 24, 2018 Hereto attached as Exhibit A-B. Plaintiff was served notice of denial on November 5, 2018. See Ex.C.

30. Consequently, as a direct and proximate cause of Plaintiff's grievance among other inmates filed similar grievances complaints of assault. On August 24, 2018, Plaintiff was cuffed by two officers and escorted to a awaiting van with other Black suspected STG inmates to segregation units. Plaintiff was placed in Norfolk prison pending an out of state transfer in retaliation for grievancing the assault imminating from the "no knock cell entry" in retaliation for assault on staff.

31. Defendant Turco, former Deputy Comm'r of Correction, and former Deputy of Clasifcation, Silva, Nano, and Deputy Supt' of Classification coordinated Plaintiff's transfer to MCI-Norfolk administrative segregation and began to manipulate Brown's recent institutional history as justification to characterize him as a present threat warranting transfer in retaliation for his grievance against the Tactical Response Team (move team) Defendants I-VI. This violated Plaintiff's first Amendment rights to the U.S. Constitution.

32. On August 28, 2018, Plaintiff filed a grievance directly to Defendant Turco's office regarding the retaliation against him fror exercising his grievance rights. When Defendants knew that Plaintiff had not incurred a disciplinary infraction in two years , was housed in a privilege L-2 Unit by Defendants Silva, Nano, Deputy of Classification, and Director of Security and employed as a gym runner.

6.

## COUNT II. CIVIL RIGHTS FOR RETALIATION UNDER 42 USC § 1983

Plaintiff hereby incorporates paragraphs 1-37 by reference herein below:

38. Defendants Turco III, Deputy Comm'r of Operations, Deputy Comm'r Classification, Silva, Nano, Director of Security (DOS) and Deputy Supt' Classification in violation of Plaintiff's first Amendment to the U.S. Constitution and G.L.c.127 §32 . When Silva reported Plaintiff's and other inmates grievances to Defendant Turco regarding excessive force stemming from the "no knock cell entry". Resulting in a coordinated effort to send Plaintiff and others out of state in retaliation for filing a grievance and to hobble any effort to seek relief from court by Turco III.

39. As a result of Silva and Turco's actions, Deputy Comm'r Operations and Classifications, Nano, DOS, and Deputy Supt' Classification coordinated Plaintiff and others to be removed from SBCC to be housed at MCI-Norfolk to placed on administrative hold awaiting out state transfer. These Defendants began to manipulate Plaintiff's institutional history to justify his out of state transfer by omitting his recent positive conduct as attested by his placement in L-2 unit. And creating a report that reference past incidents as if they had all occurred in a short span of each other. When they had occurred years apart and nothing in Plaintiff's recent conduct had warranted an out state transfer.

40. As a direct and proximate cause of Defendants' actions Plaintiff had spent 11 months in segregation at MCI-Norfolk where he was severely restricted to 23 hours segregation, limited property, no ability to purchase canteen, phone twice a week, and a hour recreation in a cage. He also suffer emotional distress.

## COUNT III. CIVIL RIGHTS VIOLATION UNDER G.L.C. 12 §11I & 11H

Plaintiff hereby incorporates paragraphs 1-40 by reference herein below:

41. Defendant Turco III, Deputy Comm'r of Operation, Deputy Comm'r Classification, Silva, Nano, DOS, and Deputy Supt' Classification violated Plaintiff's 1st amendment rights and equal protection 14th amendment to U.S. Constitution , G.L.c 127 §32. When Silva reported Plaintiff's and other inmates grievance to Defendant Turco regarding excessive force stemming from a "no knock cell entry". Resulting in a coordinated effort to send plaintiff and other's out of state in retaliation for filing a grievance and to hobble any effort to seek relief from

6.

33.    Consequently of Defendants collective retaliatory actions Plaintiff had spent 90 days in MCI-Norfolk segregation before being released to a level four facility at MCI-Concord demonstrating that he was not a security risk. Defendant Turco never replied to Plaintiff's grievance. Hereto attached as Ex. D.

### CAUSE OF ACTION:

### I.   VIOLATIONS OF CIVIL RIGHTS UNDER 42 USC § 1983

Plaintiff hereby incorporates paragraphs 1-33 by reference herein below:

34.    Plaintiff Turco III, Former Deputy Comm'r of Operations, Deputy Comm'r of Classifications, Silva, Nano, Deputy Supt', and John Doe I-VI deprived Plaintiff of his 8th amendment rights to the U.S. Constitution. When Defendant Turco authorized a "no knock cell entry" in violation of established state law protections of 103CMR505 and Defendants Deputy Comm'r Operations, Deputy Comm'r of Classifications coordinated this authorization and Defendants of the tactical team carried it into effect that led to Plaintiff's injuries and assault.

35.    Defendants Decision to place Plaintiff on this specialize list to be targeted by Turco's authorization in order to send a punitive message to any perceived Black STG leader that staff assaults will not be tolerated further violated Plaintiff's 8th amendment rights. When these Defendants knew that Plaintiff had no STG affiliation with the group responsible for the assault , and they placed Plaintiff in the privilege unit for good behavior resulting from two years disciplinary free and employment as a gym runner. These defendants being Silva, Nano, Director of Security and Deputy Supt' of Classification placed Plaintiff on that list to be targeted by Defendants I-VI.

36.    Defendants I-VI unlawful breach into Plaintiff's cell led to Defendants use of excessive force despite his compliance with their orders. Resulting in being physically tackled to the floor, hitting his head off the bedframe and having an officer placing his knee on his kneck for a period of time despite he was not resisting in any way. Resulting in further violation of the 8th amendment to the U.S. Constitution and denial of medical care.

37.    As a direct and proximate cause of Defendants' wrongful conduct, Plaintiff suffered conscious and physical pain. His head was swollen and almost lost consciousness from being unable to breath from the knee of his neck causing emotional distress.

court by Turco III.

42. As a result,of Silva and Turco's actions, Deputy Comm'r Operations, Deputy Comm'r of Classification, Nano, Silva, DOS , and Supt' Classification coordinated Plaintiff and other inmates removal from SBCC to be housed at MCI-Norfolk to be placed on a administrative hold awaiting out of state transfer. These Defendants began to manipulate Plaintiff's institutional history to justify his out of state transfer by omitting his recent positive conduct as attested by his placement in L-2 unit. And created a report portrayed his past events as having occurred over in a short span of one another when in fact the reference incidents had occurred years a part. It also omitted that Plaintiff had nothing to do with the staff assault that occurred on August 20, 2018. This was done to portray Plaintiff as a continued problem in the prison.

43. As a direct and proximate cause of Defendants' action Plaintiff had spent 11 months in segregation at MCI-Norfolk where he was severely restricted to 23 hours a day in segregation, limited property, no ability to purchase canteen, phone access twice week, and a hour recreation in a cage. He also suffers emotional distress.

COUNT. IV. **MASSACHUSETTS STATE TORT ACT VIOLATIONS**

Plaintiff hereby incorporates paragraphs 1-43 by reference herein below:

44. Defendants I-IV by their acts and omissions violated the Massachusetts Tort law for assault and battery when Defendants tackled Plaintiff to the cell floor despite his complying with the order to get on his knees. Resulting in Plaintiff hitting his head off the bedframe on the way down to the floor in which then Defendant I placed his knee on Plaintiff's neck despite he was not resisting and held him in that position unnecessarily until he was about to lose consciousness. Plaintiff had not resisted.

45. As a direct and proximate cause of Defendants' wrongful conduct, Plaintiff suffered conscious and physical pain. His head had swollen and suffered emotional distress.from his circulation being cut off from a knee on his neck.

COUNT V. **MASSACHUSETTS STATE TORT ACT VIOLATIONS**

Plaintiff hereby incorporates paragraphs 1-45 by reference herein below:

8.

46. Defendants by their actions and omission violated the Massachusetts State Tort Law when Defendants intentionally inflicted emotional distress on Plaintiff. When Defendants I-VI tackled Plaintiff to the cell floor despite complying with the order to get on his knees. Resulting in his head hitting the bedframe then Defendant I placed a knee on his neck until Plaintiff almost lost consciousness despite Plaintiff had not resisted.

47. Defendants Turco III, Deputy Comm'r Operations, Deputy Comm'r of Classification, Silva, Nano, Supt' Classification DOS retaliated against Plaintiff for grievancing staff assault by Defendants I -VI resulting in placement in MCI-Norfolk pending an out of state transfer for 90 days was an intentional infliction of emotional distress.

48. As a direct and proximate cause of Defendants actions Plaintiff sufferred emotional distress and conscious pain during these incidents.

### COUNT VI. MUNICIPAL LIABILITY VIOLATION PURSUANT TO 42 USC § 1983

Plaintiff hereby incorporates and paragrapgs 1-48 herein below:

49. Defendant Turco knew or should have known that when he exceeded the 103CMR505 force policies by authorizing Defendants I-VI to use a "no knock cell entry" into Plaintiff's cell given the charged climate and in response to a prior serious staff assault the day before that his authorization would lead to assaults on inmates or excessive force employed upon entry into these targeted cells. And when Defendant Turco's present force procedures protect staff from any weapon assaults through a series of available chemical agents and shield use to ward off any potential refusal to cuff up to be removed from the cell.

50. As a direct and proximate cause of Defendant Turco's authorization of the "no knock cell entry" into Plaintiff's cell. Defendants I-VI employed excessive force against Plaintiff resulting in his injuries to his head and neck from having his airway circulation obstructed by a knee being placed on his neck for extended period of time despite Plaintiff was no resisting.

9.

**PRAYERS OF RELIEF:**

Wherefor, Plaintiff Brown, humbly request that this Honorable Court to grant him:

A.   Award Plaintiff compensatory damages against each Defendant in the amount of $100,000.

B.   Award Plaintiff punitive damages in the amount of $10,000 against each defendant.

C.   Award nominal damages against each defendant.

D.   Award Attorney fees pursuant to 42 USC §1988

E.   Award Court cost.

F.   Award whatever else that this Court deeem just and fit.

Respectfully Submitted
Pro-se

Dated: 6-30-21

Rashard Brown
P.O.Box 43
Norfolk Ma 02056

**VERIFIED COMPLAINT:**

I, Rashard Brown verify that I did read paragraphs 1-50 and they are true and accurate under the pains and penalties of perjury:

Dated: 6-30-21

Sign